IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DANA HARRIS and<br>DARREN HARRIS,<br><br>         Plaintiffs,<br><br>vs.<br><br>WAL-MART STORES EAST, LP,<br><br>         Defendant. | CIVIL ACTION NO.<br>1:11-CV-03406-CC |

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment [Doc. No. 71].[1] The Court heard oral argument on Defendant's Motion on December 9, 2013. After carefully reviewing the parties' submissions, the record in this case, and the applicable law, the Court **DENIES in part** and **GRANTS in part** Defendant's Motion.

## I.   BACKGROUND

### A.   Facts

On July 31, 2007, Plaintiff Dana Harris ("Ms. Harris") was arrested for theft by taking at Wal-Mart store number 5275 (the "Store") in Woodstock, Georgia. (Def.'s Statement of Material Facts as to Which There Exists No Genuine Issue to Be Tried & Theories of Recovery "DSUMF" ¶ 1.) Defendant Wal-Mart Stores East, LP ("Wal-Mart") accused Ms. Harris of making fraudulent returns with Wal-Mart associate, Katum Williams, who was also arrested that day. (DSUMF ¶¶ 1, 10, 11.) When she was arrested, Ms. Harris was an hourly supervisor in the Store's electronics department. (DSUMF ¶ 2.) Ms. Harris's son, Darren Harris ("Mr.

---

[1] The parties have also filed three perfunctory motions to exceed the page limitation. (Docs. No. 70, 72, 74.) Having read and considered the motions, the Court **GRANTS** the motions **nunc pro tunc**.

Harris") was an hourly part-time associate in the Store's tire and lube express department. (DSUMF ¶ 3; Compl.¶ 7.) Williams also worked in the tire and lube express department. (DSUMF ¶ 6.) He was a department manager and hourly supervisor, but was never a salaried Wal-Mart manager. (DSUMF ¶ 6.)

Kristina Collins is a Wal-Mart asset protection manager, but on the day of the arrest, she was an asset protection coordinator and was post certified.[2] (PSMF ¶¶ 1, 2.) Before working for Wal-Mart, Collins was a police officer for eight years, and she had worked as an officer with the Cherokee County Sheriff's Department. (PSMF ¶¶ 2, 4; DSUMF ¶ 39.) Collins graduated from North Central Georgia Law Enforcement Academy (the "Academy"), took a course in probable cause at the Academy, and was familiar with the concept of probable cause. (PSMF ¶¶ 2, 3; DSUMF ¶ 39.) Before July 31, 2007, Collins had arrested suspects for theft by taking and had applied for warrants for this crime. (PSMF ¶ 5.) In fact, she had taken out more than ten warrants. (PSMF ¶ 5.) At the time of the arrest, Natasha Sutton was also a Wal-Mart asset protection employee. (DSUMF ¶ 15.)

While working at Wal-Mart, Williams allegedly made several fraudulent refunds, which were recorded in an electronic journal. (Pls.' Statement of Additional Facts "PSMF" ¶ 13.) On May 20, 2007, he used Rosetta's employee number to make a fraudulent refund for $317.85. (PSMF ¶ 18.) On July 6, 2007, he used salaried assistant manager Wesley's employee number to make a fraudulent refund for $367.82. (PSMF ¶ 19.) On July 13, 2007, he again used salaried manager Wesley's employee number to make a fraudulent refund for $1,676.52. (PSMF ¶ 13.) On July 14, 2007, he made fraudulent refunds for $379.48 and for $402.29, again by using

---

[2] During oral argument, Ms. Harris's counsel stated that, under Georgia law, a post certified officer can obtain a warrant without the other party appearing before the magistrate.

salaried manager Wesley's employee number. (PSMF ¶¶ 14-15.) On July 15, 2007, he made a fraudulent refund for $104.69. (PSMF ¶ 16.) And on July 20, 2007, he again used salaried manager Wesley's employee number to make a fraudulent refund for $1,477.64. (PSMF ¶17.) Many of these refunds were made at register 90 in the customer service area. (PSMF ¶¶13-16, 19.)

Williams also made a fraudulent refund to Ms. Harris's debit card. (DSUMF ¶¶ 20-23.) Ms. Harris did not observe Williams perform the refund, but about an hour after she had given him her card, he returned it. (DSUMF ¶¶ 22, 23.) Ms. Harris admitted that Williams owed her $100 for bonding him out of jail about a month or two before her arrest. (DSUMF ¶¶ 13, 18.) She agreed to allow him to repay her by returning merchandise she did not purchase onto her debit card. (DSUMF ¶¶ 17, 21.) She also admitted giving him her debit card for him to do the returns in the automotive department. (DSUMF ¶¶ 17, 21.) According to Ms. Harris, Williams told her that he could not do the return on his account because his account was overdrawn. (PSMF ¶ 20.)

Although Williams owed her only $100, he returned about $400 worth of merchandise and placed the entire amount on Ms. Harris's card. (DSUMF ¶ 24.) A few days after the returns, Williams went to Ms. Harris and asked her to check her account balance, which she did. (DSUMF ¶¶ 25, 26.) She then withdrew the $400 at the Store, gave the entire amount to Williams, and then he gave her $100; the entire transaction occurred on the job. (DSUMF ¶ 26.) But no one was present during this exchange. (DSUMF ¶ 27.) This transaction occurred at least a couple of weeks before July 31, 2007. (DSUMF ¶ 28.) After the transaction, but before July 31, 2007, Williams again asked Ms. Harris to let him use her debit card to return merchandise because he needed cash. (DSUMF ¶ 29.) But she refused. (DSUMF ¶ 29.)

On the day of the arrest, but before Williams was arrested, Collins and Sutton interviewed him. Before the interview, Collins did not speak with any Wal-Mart associates. (PSMF ¶ 10.) During the interview, she did not take any notes or ask Williams any questions. (PSMF ¶¶ 11-12.) Sutton, however, had asked Williams to make a written statement. (PSMF ¶ 58.) After Williams wrote the statement, he, Collins, and Sutton signed it. (PSMF ¶ 20.) According to Collins, Williams told Sutton that Ms. Harris was involved in the refunds, knew they were fraudulent, and that Ms. Toundred Bond had picked up money for Ms. Harris. (PSMF ¶¶ 21, 22.) Collins signed a citizen's arrest form for Williams, and he was arrested. (PSMF ¶ 6.)

Ms. Harris was working in the electronics department when she learned from a co-worker that Williams had been arrested at the Store. (DSUMF ¶ 10.) After his arrest, Wal-Mart management paged Ms. Harris to its office, where she met with Collins, Sutton, and store manager Melanie Radocesky for less than an hour. (DSUMF ¶¶ 11, 15.) During that time, Radocesky advised Ms. Harris that she was being terminated for an integrity issue and theft because Ms. Harris had given her debit card to Williams so that he could return goods and place the value on her card. (DSUMF ¶ 16.) Sutton did not take any notes during Ms. Harris's interview and did not write any notes afterwards. (PSMF ¶¶ 52, 53.) Wal-Mart contends that no one from Wal-Mart harassed or intimidated Ms. Harris. (DSUMF ¶ 55.)

Ms. Harris provided a voluntary statement to Wal-Mart's management; Ms. Harris, Collins, and Sutton signed the statement. (DSUMF ¶¶ 14; PSMF ¶ 33.) The statement reads: "I bonded Katum Williams out of jail. Katum Williams who owe [sic] me money for money. In return, he said he will pay me back by returning items to TLE and he would refund them to my account." (DSUMF ¶¶ 14, 18-20.) Collins said the statement is a confession to theft by taking and that Ms. Harris confessed to knowing the refunds were fraudulent, but did not care. (PSMF ¶¶ 34, 35, 41.)

Collins completed a civil arrest form and a hold for a warrant for Ms. Harris. (PSMF ¶ 9.) Collins spoke to police officer Jason Nash, and at some point, Ms. Harris was arrested. (PSMF ¶ 6; DSUMF ¶ 1.) Before the arrest, Ms. Harris did not believe or think that any of her co-workers or superiors had any ill will or bad feelings toward her or wanted to harm her in any way. (DSUMF ¶ 50.)

In connection with the fraudulent refunds, Sutton allegedly interviewed Wesley because Williams made refunds in Wesley's name. (PSMF ¶ 54.) Collins and Sutton also interviewed Bond. (PSMF ¶ 23.) During Bond's interview, Collins did not talk with Bond or take notes, and Sutton did not ask Bond to make a written statement. (PSMF ¶¶ 23, 57.) Collins witnessed Sutton speaking with Bond, but does not remember what Bond told Sutton and nothing can be used to refresh her memory. (PSMF ¶¶ 23, 24.)

On August 20, 2007, the Magistrate Judge for Cherokee County signed an application for a warrant of Ms. Harris's arrest for theft by taking. (DSUMF ¶ 44.) At some point, Collins spoke with the District Attorney's Office. (PSMF ¶ 42.) On September 22, 2007, Sutton started an APIS investigation file on Ms. Harris. (PSMF ¶¶ 61, 64.) An APIS file, which is Wal-Mart's criminal file, is created when Sutton starts an incident that elevates to an investigation and then goes to a case. (PSMF ¶ 62.) Although Sutton started the APIS file in September 2007, she did not put any notes into the case file until December 3, 2007, which was the day the file was closed. (PSMF ¶¶ 65, 69.) The file does not contain any of comments that Bond, Wesley, or Williams allegedly made on July 31, 2007. (PSMF ¶¶ 66-68.)

On or about September 21, 2012, Ms. Harris's counsel deposed Collins and Sutton. During Sutton's deposition, she said Ms. Harris knew the credit card refund was fraudulent and that Ms. Harris used the word fraudulent in her statement, when Ms. Harris wrote, "he would refund them to my account," even though Sutton

did not take any notes during or after Ms. Harris's interview. (PSMF ¶¶ 45, 46, 50.) Sutton stated, "To me, she knew that he actually didn't purchase those items to do a refund." (PSMF ¶ 45.) Later, Sutton admitted that Ms. Harris did not use the word fraudulent, or a word synonymous with fraudulent, in her statement. (PSMF ¶¶ 47, 48.) Sutton then admitted Ms. Harris never told her she knew Williams was refunding items that he never purchased. (PSMF ¶ 49.) Sutton had not seen any documents showing Ms. Harris signed for any refunds. (PSMF ¶ 51.) Sutton stated there was never a transaction analysis sheet that involved Ms. Harris, and that the only transaction analysis sheet involves Williams. (PSMF ¶¶ 55, 56.) Also, Sutton said that Williams's statement mentions Ms. Harris's involvement in the fraudulent refunds, and she referred to the sentence that states: "I helped a couple of other people Dana is one." (PSMF ¶ 59.) In addition to that sentence, Sutton also referred to the sentence, which states: "I did Dana without her knowing it. She told me that it was off or wrong (amount)." (PSMF ¶ 60.)

During Collins's deposition, Collins said there were three video recordings of Ms. Harris receiving money or credit card refunds: a July 14, 2007 refund for $379.48 in cash; a July 15, 2007 refund for $402 to Ms. Harris's visa card; and a July 15, 2007 refund for $104.69 in cash. (PSMF ¶¶ 25-28.) Collins also said that Bond was recorded in one of those transactions. (PSMF ¶ 29.) But Sutton admitted that Ms. Harris is not on the July 15, 2007 video. (PSMF ¶ 44.) Additionally, Wal-Mart denies the security cameras recorded Williams refunding money to Ms. Harris's credit or debit card and does not know if the security cameras were working in the area where Williams made refunds to Ms. Harris's card. (PSMF ¶¶ 70, 71.) Wal-Mart also denies that the security cameras throughout the store were working properly. (PSMF ¶ 72.)

Also in her deposition, Collins explained what gave her probable cause. She said that before she talked with Ms. Harris she had probable cause simply because the videos show Ms. Harris with Williams. (PSMF ¶ 36.) She also said the video and Ms. Harris's statement gave her probable cause, but admitted that by itself the statement did not give her probable cause. (PSMF ¶¶ 37, 39.) Further, she said the electronic journal and Ms. Harris's statement alone gave her probable cause to arrest. (PSMF ¶ 38.) Collins then said the video, electronic journal, and Ms. Harris's statement gave her probable cause. (PSMF ¶ 40.)

Apparently, the video recordings are no longer available. Collins had the videos in her office, but does not know what happened to them. (PSMF ¶ 30.) She has never lost videos in other cases while working for Wal-Mart. (PSMF ¶ 31.) And Wal-Mart's policy is to keep videos until a case is closed. (PSMF ¶ 32.)

B.   Relevant Procedural History

On or about August 30, 2011, Dana Harris and Darren Harris ("Plaintiffs") filed suit against Wal-Mart in the Superior Court of Gwinnett County, Georgia. (See generally Compl.) In the Complaint, Plaintiffs allege claims for false arrest and imprisonment, assault and battery, defamation/slander and libel, malicious prosecution, discrimination and wrongful termination, and intentional infliction of emotional distress. Also in the Complaint, Plaintiffs seek special, general, statutory, consequential, and punitive damages, as well as attorney's fees and litigation costs.

In October 2011, Wal-Mart removed the case from the state court to this Court. After the parties engaged in extensive discovery, Wal-Mart moved for summary judgment on all of Plaintiffs' claims. However, during oral argument, Plaintiffs' counsel stated that the only claims Plaintiffs are pursuing are for malicious arrest,

malicious prosecution, and negligence pursuant to O.C.G.A. § 34-2-10.[3] Also during oral argument, Wal-Mart's counsel, on behalf of Wal-Mart, moved for summary judgment as to Darren Harris because he has no specific claims. Plaintiffs' counsel did not contest removing Darren Harris from the lawsuit. Therefore, the Court will grant Wal-Mart summary judgment as to Darren Harris. See Imaging Bus. Machs., LLC v. BancTec, Inc., 459 F.3d 1186, 1191 (11th Cir. 2006) (A district court may enter summary judgment sua sponte if the parties are given adequate notice that they must present all of their evidence.)

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 authorizes the entry of summary judgment when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In seeking summary judgment, the movant bears the initial responsibility of demonstrating that there is no genuine dispute as to any material fact and that summary judgment is appropriate. Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1313 (11th Cir. 2007) (citation omitted). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). When evaluating the merits of a motion for summary judgment, the court should view all evidence and factual inferences raised by the evidence in the light most favorable to the non-moving party and resolve all reasonable doubts concerning the facts in favor of the non-moving party. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999) (citation omitted). However, courts are not permitted to make credibility

---

[3] Because Plaintiffs did not address the false arrest and imprisonment, assault and battery, defamation/slander and libel, discrimination and wrongful termination claims in their response to Wal-Mart's Motion, they are deemed abandoned. See Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1322 (11th Cir. 2001).

determinations, weigh conflicting evidence to resolve disputed facts, or assess the quality of the evidence. Reese v. Herbert, 527 F.3d 1253, 1271 (11th Cir. 2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986)).

A fact is material if proof of its existence or nonexistence would affect the outcome of the case under controlling substantive law. Anderson, 477 U.S. at 248, 106 S. Ct. at 2510. Additionally, a factual dispute is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. Id. But a factual dispute is not genuine if it is unsupported by evidence or if it is created by evidence that is "merely colorable" or "not significantly probative." 477 U.S. at 249-50, 106 S. Ct. at 2511 (citations omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." 477 U.S. at 247-48, 106 S. Ct. at 2510.

### III.  DISCUSSION

#### A.  Malicious Prosecution

A plaintiff has a particularly heavy burden on malicious prosecution claims because the public is encouraged to bring to justice those who are apparently guilty. Wal-Mart Stores, Inc. v. Blackford, 264 Ga. 612, 613, 449 S.E.2d 293, 295 (1994). However, "where a reasonable man would investigate before beginning a criminal prosecution, he may be liable for his failure to do so." K-Mart Corp. v. Coker, 261 Ga. 745, 750, 410 S.E.2d 425, 429 (1991) (Smith, P.J., dissenting) (citation omitted). To prevail on a claim for malicious prosecution, the plaintiff must show: (1) prosecution for a criminal offense instigated by defendant; (2) issuance of a valid warrant, accusation, indictment, or summons; (3) termination of the prosecution in favor of plaintiff; (4) malice; (5) want of probable cause; and (6) damage to plaintiff.

Kaiser v. Tara Ford, Inc., 248 Ga. App. 481, 486, 546 S.E.2d 861, 867 (2001) (citing O.C.G.A. § 51-7-40).

In its summary judgment motion, Wal-Mart contends that (1) Ms. Harris cannot prove that the criminal proceeding terminated in her favor, (2) it did not arrest or prosecute Ms. Harris, (3) probable cause existed for her arrest and prosecution, and (4) there is no evidence that Wal-Mart acted with malice. The Court will address each of Wal-Mart's contentions in the order they are presented.

### 1. *Termination in favor of plaintiff*

Wal-Mart argues that Ms. Harris cannot show that the criminal proceedings terminated in her favor because there is no evidence that the proceedings terminated because she was innocent of the charges. Ms. Harris asserts that the assistant district attorney's dismissal of the warrants against her shows that the prosecution terminated in her favor.

Wal-Mart cites Uboh v. Reno, 141 F.3d 1000, 1004 (11th Cir. 1998), for the proposition that "[o]nly terminations that indicate that the accused is innocent ought to be considered favorable for purposes of a malicious prosecution case." (Doc. No. 71-2 at 9.) In Uboh, the Eleventh Circuit, in dictum, noted, "[c]ourts have . . . reasoned that only terminations that indicate that the accused is innocent ought to be considered favorable." 141 F.3d at 1004. But the Eleventh Circuit also noted that "courts have found favorable termination to exist by virtue of an . . . order of dismissal reflecting an affirmative decision not to prosecute." Id. at 1005 (citations omitted). Nonetheless, the dictum that Wal-Mart relies on does not change the established law that the issue in a malicious prosecution case is not the plaintiff's guilt or innocence. Gibson's Prods. Co. of Albany v. McDaniel, 122 Ga. App. 264, 264, 176 S.E.2d 548, 549 (1970) (citations omitted). Moreover, the final ruling in Uboh is consistent with what Georgia courts consider favorable terminations. Uboh,

141 F.3d at 1005 ("the prosecutor's decision to dismiss the drug counts constituted favorable termination[]"); see also Ayala v. Sherrer, 234 Ga. 112, 114-15, 214 S.E.2d 548, 549, 551 (1975) (citing cases) (where a valid warrant is dismissed, with or without the prosecutor's consent, the dismissal is prima facie evidence that the termination was in favor of the person arrested); Page v. Citizens' Banking Co., 111 Ga. 73, 73, 36 S.E. 418, 419 (1900) (if the prosecutor dismisses an arrest warrant after "stating that it was impossible to make out a case," a plaintiff can state a claim for malicious prosecution assuming they can show the other elements of the claim); Laster v. Star Rental, Inc., 181 Ga. App. 609, 609, 353 S.E.2d 37, 38 (1987) (It is also sufficient to show "the voluntary abandonment of the case by the party who instituted the prosecution").  Unfavorable terminations include those where a criminal defendant settles with the prosecutor, where a defendant consents to the termination of the criminal action, and where the prosecutor dismisses without prejudice on jurisdictional grounds but then diligently reinstates prosecution in a court with proper jurisdiction.  See Gray v. Dental One Assocs., Inc., 269 Ga. App. 888, 889, 605 S.E.2d 366, 367 (2004); Sherrill v. Stockel, 252 Ga. App. 276, 279, 557 S.E.2d 8, 11 (2001); Vadner v. Dickerson, 212 Ga. App. 255, 256, 441 S.E.2d 527, 528 (1994).  Similarly, when the state dismisses a case because of an agreement and compromise between the parties, the prosecution has not terminated in favor of the party pursuing a malicious prosecution claim.  Commercial Plastics & Supply Corp. of Ga. v. Molen, 182 Ga. App. 202, 203-04, 355 S.E.2d 86, 87 (1987).

Here, Ms. Harris provides a certified copy of assistant district attorney Holly Varner's Request to Dismiss Warrants [Doc. No. 73-7 at 2], which was approved by assistant district attorney Lawton W. Scott.  (Doc. No. 73-7 at 2.)  The Request states:

> Wal-Mart has been contacted numerous times by our office requesting necessary evidence, Wal-Mart loss prevention officials have finally responded, stating that all video and computer transactions have been

>   lost. Without any evidence other than the defendant's statement, the State does not believe it can prove this case beyond a reasonable doubt.

(Id.) Wal-Mart contends that this dismissal more closely resembles a dismissal "in the interest of justice," which is not a favorable termination. (Doc. No. 75 at 7-8) (internal quotation marks omitted). Where the stated basis for dismissal is "in the interests of justice," courts have refused to permit a finding of favorable termination. Uboh, 141 F.3d at 1005. But here, there is no indication that the assistant district attorney's stated basis for dismissal was "in the interest of justice." Thus, Wal-Mart's argument on this point is unpersuasive.

Because Ms. Harris presents evidence that the assistant district attorney dismissed the warrant because the State could not make out a case, a jury could find that the prosecution was favorably terminated.

### 2. *Prosecution instigated by defendant*

Wal-Mart argues that it did not instigate the prosecution of Ms. Harris because it did not arrest or prosecute her. Instead, Wal-Mart contends its employees merely relayed facts to the police. Ms. Harris argues that when Collins signed a citizen's arrest form and went to a judge to take out an affidavit for arrest, Wal-Mart instituted prosecution.

There is a fine line between cases where a party directly or indirectly urges a law enforcement official to begin criminal proceedings and cases where a party merely relays facts to an official who then makes an independent decision to arrest or prosecute. In the former case there is potential liability for malicious prosecution, but in the latter case there is not. Tench v. Turner, 201 Ga. App. 156, 157, 410 S.E.2d 357, 358 (1991) (citations omitted). A party need not expressly directly initiate the criminal action to be held liable. Id. Indeed, "[a] person may be held liable for unduly influencing the decision to prosecute by providing information that is known to be false, misleading[,] or materially incomplete." Holmes v. Achor Ctr.,

Inc., 249 Ga. App. 184, 191, 547 S.E.2d 332, 337 (2001). The central question is whether the officials involved made an independent decision to arrest or prosecute. Jackson v. Kmart Corp., 851 F. Supp. 469, 472 (M.D. Ga. 1994) (internal quotation marks omitted) (citing Baggett v. Nat'l Bank & Trust Co., 174 Ga. App. 346, 347, 330 S.E.2d 108, 109 (1985)).

Here, Ms. Harris points to the civil arrest and hold for warrant form that Collins completed. The form, which is dated July 31, 2007, states:

> I acknowledge and represent that I have on this date, made a citizen's arrest of Dana Harris, and that rather than transporting said suspect/subject myself, I have requested the Cherokee County Sheriff's Office transport said suspect/subject to the appropriate court or facility. I will immediately proceed to said court to seek the issuance of an appropriate warrant or petition. I acknowledge that no officer or employee of the Cherokee County Sheriff's Office has advised or encouraged me to make this arrest or to prosecute this case.

(Pls.' Mot. in Opp'n for Summ. J. Ex. A [Doc. No. 73-7] at 3.) This form is enough to show that Wal-Mart did more than relay facts to the Cherokee County police. Compare Duchess Chenilles, Inc. v. Masters, 84 Ga. App. 822, 827, 67 S.E.2d 600, 604-05 (1951) (telling officers that the plaintiff had been stealing goods and summoning the officers to apprehend the plaintiff for the alleged theft is enough to show that the defendant procured the plaintiff's arrest), with Webb v. Prince, 62 Ga. App. 749, 749, 9 S.E.2d 675, 677 (1940) (a defendant who simply states to an officer what he or she knows about a supposed offense, even though he expresses the opinion that there is ground for arrest, but without making any charge or requesting an arrest is not liable). Additionally, during oral argument, Wal-Mart's counsel stated that the police did not ask Ms. Harris anything substantive about the alleged crime. This also shows that the police did not make an independent decision to arrest. On these facts, a reasonable jury could find that Wal-Mart instigated the arrest and prosecution against Ms. Harris.

    3.  *Want of probable cause*

Lack of probable cause is the gravamen of all malicious prosecution claims. If there is any probable cause for prosecution, even if the prosecutor actually had an improper motive, a plaintiff cannot recover. Seamans v. Hoge, 105 Ga. 159, 159, 31 S.E. 156, 156 (1898); Barnette v. Coastal Hematology & Oncology, P.C., 294 Ga. App. 733, 736, 670 S.E.2d 217, 220 (2008). Determining probable cause is a mixed question of law and fact. McKissick v. S.O.A., Inc., 299 Ga. App. 772, 774, 684 S.E.2d 24, 27 (2009) (citations omitted). A jury must decide whether the circumstances alleged to show probable cause existed, and a court determines whether these circumstances amount to probable cause. Id.

While absolute certainty as to the facts is not required for probable cause, more than mere conjecture or unfounded suspicion is required. Melton v. LaCalamito, 158 Ga. App. 820, 824, 282 S.E.2d 393, 398 (1981). Probable cause is the existence of such facts and circumstances that would excite the belief in a reasonable mind that the person charged was guilty of the crime for which he is prosecuted. That belief must be supported by appearances known to the defendant at the time he initiates the prosecution, and the appearances must be such as to lead a reasonable man to set the criminal proceeding in motion. McKissick, 299 Ga. App. at 774, 684 S.E.2d at 28 (citations omitted). On the other hand, probable cause is lacking when the circumstances are such as to satisfy a reasonable man that the accuser had no ground for proceeding but his desire to injure the accused. 299 Ga. App. at 774-75, 684 S.E.2d at 28 (citations omitted); Horne v. J.H. Harvey Co., 274 Ga. App. 444, 448, 617 S.E.2d 648, 652 (2005) ("No probable cause exists if a defendant 'knew that the facts stated to the law enforcement official were false or if he failed to make a fair, full, and complete statement of the facts as they existed, or if he concealed facts.'").

Wal-Mart contends that the State Warrant for Ms. Harris's arrest provides prima facie evidence of probable cause for prosecution. Wal-Mart's assertion is correct, but it is not a complete statement of the law because as with any prima facie showing it may be rebutted by evidence showing the opposite.[4] See McKissick, 299 Ga. App. at 776, 684 S.E.2d at 29. Ms. Harris denies knowing that the refunds were fraudulent and she denies knowing that Williams was refunding items that he had not purchased. During oral argument, Ms. Harris's counsel also argued that probable cause was lacking because Williams confessed to making the fraudulent returns and stated that she was not involved. This evidence is enough to rebut the prima facie evidence of probable cause. See Condon v. Vickery, 272 Ga. App. 381, 382, 612 S.E.2d 574, 575 (2005). Similarly, the fact that the assistant district attorney dismissed the charges against Ms. Harris is evidence that probable cause was lacking. See Gooch v. Tudor, 296 Ga. App. 414, 419, 674 S.E.2d 331, 336 (2009).

Wal-Mart also argues that there was probable cause because it undertook a reasonable investigation into the fraudulent returns by reviewing video, an electronic journal, a transaction analysis, and a refund report, among other things. Ms. Harris contends that none of these things amount to probable cause because: (1) the investigation was unreasonable and improper; (2) Collins's statement that Ms. Harris took part in the fraudulent refunds was false; (3) the electronic journal shows

---

[4] A person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated. O.C.G.A. § 16-8-2; Tate v. Holloway, 231 Ga. App. 831, 834, 499 S.E.2d 72, 74 (1998). Theft by taking requires evidence that the requisite intent to deprive the owner of the property was present at the time of the taking. Brown v. State, 302 Ga. App. 641, 643, 692 S.E.2d 9, 11 (2010) (citations omitted); Spray v. State, 223 Ga. App. 154, 156, 476 S.E.2d 878, 881 (1996). Indeed, there can be no theft if the alleged suspect took under a fair claim of right to the property. Cincinnati Ins. Co. v. Tire Master of Thomaston, Inc., 183 Ga. App. 64, 65, 357 S.E.2d 812, 814 (1987).

Williams making fraudulent refunds under other employees' names and does not show Ms. Harris making fraudulent refunds; (4) the transaction analysis does not involve Ms. Harris; (5) the refund review report shows less information than the electronic journal; (6) the testimony regarding the video is so unreasonable that no jury would believe Wal-Mart; and (7) Collins admitted that she did not speak with any associate before assisting Sutton with the alleged interview of Wesley, Williams, Bond, and Ms. Harris.  Because the facts underlying Wal-Mart's investigation are in dispute, this issue should be submitted to a jury.  Tate v. Holloway, 231 Ga. App. 831, 833, 499 S.E.2d 72, 74 (1998) (citing O.C.G.A. § 51-7-43) (unless the facts regarding probable cause are undisputed, it is a question for the jury); Gauck v. Meleski, 346 F.2d 433, 435 (5th Cir. 1965) (the court's task is limited to determining whether factual disputes exists and not determining the issues themselves).

        *4.*    *Malice*

Wal-Mart argues that there is no evidence of malice because it did not act to achieve some personal goal nor have spite toward Ms. Harris.  Wal-Mart also contends that Ms. Harris is not entitled to an inference of malice because there is some evidence of probable cause for her arrest and prosecution.  In response, Ms. Harris states that Collins's false statements to the police and the judge, Wal-Mart's continuation of the case knowing that Ms. Harris was not guilty, the total lack of probable cause, and Wal-Mart's attempt to achieve a personal goal by arresting Ms. Harris show that Wal-Mart acted with malice.

Malice is defined as personal spite or a general disregard of the right consideration of mankind, directed by chance against the individual injured. McClelland v. Courson's 441 S. Station, Inc., 248 Ga. App. 170, 171, 546 S.E.2d 300, 301 (2001) (citing O.C.G.A. § 51-7-2).  Malice may be inferred if probable cause is lacking, Auld v. Colonial Stores, Inc., 76 Ga. App. 329, 337, 45 S.E.2d 827, 835 (1947),

or if the "defendant's acts were wanton or were done with a reckless disregard for or conscious indifference to the rights of the plaintiff." Willis v. Brassell, 220 Ga. App. 348, 352, 469 S.E.2d 733, 738 (1996) (citations omitted). Because the Court has determined that the issue of probable cause should be submitted to a jury, a jury must decide the issue of malice. See Medoc Corp. v. Keel, 166 Ga. App. 615, 616, 305 S.E.2d 134, 136 (1983) (when the question of probable cause is submitted to a jury, a jury should also resolve the issue of malice); see also Kviten v. Nash, 150 Ga. App. 589, 591, 258 S.E.2d 271, 274 (1979) (where there is evidence that the defendant lacked probable cause, a jury must decide whether to infer malice).

Even if there was some evidence of probable cause, a jury should determine the issue of malice because Ms. Harris offers evidence that Collins told the police and the magistrate judge that Ms. Harris committed a theft even though Collins knew that Ms. Harris denied the charges and that Williams denied that Ms. Harris was involved. K-Mart Corp. v. Lovett, 241 Ga. App. 26, 28, 525 S.E.2d 751, 754 (1999) abrogated on other grounds by Golden Peanut Co. v. Bass, 249 Ga. App. 224, 547 S.E.2d 637 (2001); Fleming v. U-Haul Co. of Ga., 246 Ga. App. 681, 683-84, 541 S.E.2d 75, 78 (2000) (genuine issue of material fact regarding defendant's malice where defendant reported a crime despite plaintiff's explanation regarding alleged crime).

Therefore, the Court denies summary judgment on the malicious prosecution claim.

   B.  Failure to Provide a Safe Environment Under O.C.G.A. § 34-2-10

Although Wal-Mart and Ms. Harris address this claim in their briefs, this claim is not mentioned in Ms. Harris's Complaint. Therefore, it is not properly before the Court. See Free v. Bland, 369 U.S. 663, 671, 82 S. Ct. 1089, 1094, 8 L. Ed. 2d 180 (1962) (where there is no direct allegation of a claim in a pleading, that claim cannot be decided on summary judgment); see also Gilmour v. Gates, McDonald &

Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (claims cannot be raised for the first time at the summary judgment stage).

### C.    Punitive Damages

Wal-Mart contends that there is no record evidence to establish that its alleged conduct rose to a level that might authorize a jury to award punitive damages. Ms. Harris asserts that the threat of criminal prosecution is sufficient for punitive damages and that a rational jury could conclude Wal-Mart acted maliciously. In Georgia, a claim for punitive damages is effective only if there is a valid claim for actual damages to which it could attach; thus punitive damages may not be recovered if there is no entitlement to compensatory damages. Wood v. Archbold Med. Ctr., Inc., 738 F. Supp. 2d 1298, 1371 (M.D. Ga. 2010). In a malicious prosecution case, punitive damages are allowed where a defendant's act was influenced by malicious motives and was without probable cause. Willis v. Brassell, 220 Ga. App. 348, 354, 469 S.E.2d 733, 740 (1996). Because the issues of malice and probable cause will be submitted to a jury, summary judgment on Ms. Harris's request for punitive damages is improper. See U.S. Liab. Ins. Co. v. PC Gen. Agency, Inc., No. 1:07-CV-1476-JOF, 2009 WL 812047, at *6 (N.D. Ga. Mar. 27, 2009); Meyer v. Trux Transp., Inc., No. CIV A 105CV-02686-GE, 2006 WL 3246685, at *4-5 (N.D. Ga. Nov. 8, 2006).

### D.    Attorney's Fees and Costs of Litigation

Wal-Mart argues that it is entitled to summary judgment on this claim because Ms. Harris has not specially pleaded this claim in the Complaint and because the record is absolutely devoid of any facts to support a claim that Wal-Mart acted in bad faith and was stubbornly litigious under O.C.G.A. § 13-6-11. Ms. Harris contends that summary judgment should not be granted on her claim for attorney's fees under O.C.G.A. § 13-6-11 because Wal-Mart acted in bad faith by falsely

accusing Ms. Harris of theft by taking. In her Complaint, Ms. Harris seeks attorney's fees and costs of litigation pursuant to O.C.G.A. § 9-15-14. Therefore, a claim for fees under O.C.G.A. § 13-6-11 is not properly before the Court. See Trotter v. Summerour, 273 Ga. App. 263, 267, 614 S.E.2d 887, 890 (2005) (Attorney's fees under these two statutes are based on different categories of sanctionable conduct.); see also Williams v. Binion, 227 Ga. App. 893, 894, 490 S.E.2d 217, 218 (1997) (these statutes cannot be used interchangeably).

  E. Spoliation Sanctions

Wal-Mart also seeks spoliation sanctions against Ms. Harris arguing that Ms. Harris admittedly destroyed Wal-Mart receipts after litigation commenced but before her deposition in this case. Specifically, Wal-Mart asserts that Ms. Harris admittedly destroyed other Wal-Mart receipts. (Doc. No. 71-2 at 28) (emphasis added). Ms. Harris states that she has not destroyed any evidence and never testified that she had receipts for the transactions that Wal-Mart claims were fraudulent.

Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. Graff v. Baja Marine Corp., 310 F. App'x 298, 301 (11th Cir. 2009). Federal law governs the imposition of sanctions for spoliation of evidence in a diversity action. Martinez v. Brink's, Inc., 171 F. App'x 263, 268 n.7 (11th Cir. 2006). The party seeking spoliation sanctions must prove that (1) the missing evidence existed at one time, (2) the alleged spoliator had a duty to preserve the evidence, and (3) the evidence was crucial to the movant being able to prove its prima facie case or defense.

Based on the Court's review of the record, it is unclear whether Ms. Harris had these other Wal-Mart receipts. According to Ms. Harris's deposition testimony,

she found two receipts in a box belonging to Bond, and she gave these receipts to Wal-Mart. (Doc. No. 65 at 16 ¶¶ 2-23.) Ms. Harris then stated that she threw out the rest of the papers in the box. (Doc. No. 65 at 19 ¶¶ 16-19.) Ms. Harris also stated that the rest of the papers were bills belonging to Bond. (Id.) Without more, the Court cannot conclude that these other receipts existed at one time. Therefore, the Court denies Wal-Mart's request for spoliation sanctions.

## IV.   CONCLUSION

For the reasons stated above, the Court **DENIES in part** and **GRANTS in part** Defendant's Motion for Summary Judgment [Doc. No. 71]. The Court also **DENIES** Defendant's request for spoliation sanctions. Further, the Court **INSTRUCTS** the parties to submit a proposed joint consolidated pretrial order in accordance with Local Rule 16.4 within **thirty (30) days** of the date of this Order.

SO ORDERED this 23rd day of December, 2013.

*s/   CLARENCE COOPER*

CLARENCE COOPER
SENIOR UNITED STATES DISTRICT JUDGE